Exhibit A

LEXSEE 1996 U.S. DIST. LEXIS 19308

GEORGE W. JACKSON, JR., Plaintiff, v. CITY OF CHICAGO, Defendants.

No. 96 C 3636

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1996 U.S. Dist. LEXIS 19308

December 17, 1996, Decided
December 18, 1996, DOCKETED

**DISPOSITION:** [*1] City of Chicago's partial motion to dismiss as to the November 1993 non-promotion in Counts I and II granted; motion to dismiss Counts III and IV in their entirety granted; and motion to strike Jackson's exemplary damage request granted. All dismissals are without prejudice.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] A court is bound to accept the allegations in the complaint as true when deciding motions to dismiss.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN2] The Federal Rules of Civil Procedure require that separate claims be stated in separate counts. *Fed. R. Civ. P. 10(b)*. Each claim founded upon a separate transaction or occurrence shall be stated in a separate count.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN3] A motion to dismiss brought under *Fed. R. Civ. P. 12(b)(6)* should be granted if the complaint fails to state a claim that entitles the plaintiff to relief. In evaluating the motion, the court must assume all well-pleaded allegations in the complaint are true, and construe them in the light most favorable to the plaintiff. The court must be satisfied beyond doubt that the plaintiff can prove no set of facts in support of his cause of action before dismissing it. The court need not, however, ignore facts in the complaint that undermine the plaintiff's case.

*Governments > Federal Government > Claims By & Against*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN4] A plaintiff's right to sue in federal court for employment discrimination under either Title VII or the Age Discrimination in Employment Act is dependent on first filing a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). *42 U.S.C.S. § 2000e-5(e)(1), (f)(1)*; *20 U.S.C.S. § 626(d)*. Timeliness is determined by state law. If the state has an agency with authority to grant relief from employment discrimination, as Illinois does, the plaintiff is afforded additional time: 300 days, instead of 180 days, from the act of discrimination, to file the EEOC charge. *42 U.S.C.S. § 2000e-5(e)(1)*; *29 U.S.C.S. §§ 626(d)(2), 633(b)*. The limitations period commences on the date the employee allegedly learned of the discriminatory decision.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN5] A federal district court is bound to accept as true the allegations of the complaint and its exhibits. If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN6] A court is empowered to consider facts raised in the plaintiff's opposition brief to the extent they can be proved consistent with the allegations in the complaint.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
[HN7] The retaliation provisions of Title VII prohibit an employer from discriminating against an employee because he has opposed any practice made an unlawful employment practice under Title VII, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C.S. § 2000e-3(a). The Age Discrimination in Employment Act (ADEA) is substantively identical. 29 U.S.C.S. § 623(d). As distilled by case law, these statutes require proof of three elements for a prima facie retaliation case: the plaintiff must show (1) he engaged in statutorily protected activity; (2) he suffered an adverse action by his employer; and (3) a causal link between the protected expression and the adverse action. To satisfy the first element, statutorily protected activity, the plaintiff must demonstrate that he reasonably believed he was challenging conduct that violates Title VII or the ADEA. The critical inquiry is the plaintiff's subjective belief that his employer is acting in ways these statutes forbid, not the objective fact of discrimination.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN8] Documents that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.

*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN9] The critical inquiry in determining whether an employer has followed a covert practice of discrimination over a period of time is whether its acts were closely related or merely discrete, isolated, and completed acts which must be regarded as individual violations. The passage of time between and the independent nature of the decisions are factors to consider in answering this question.

*Governments > Courts > Judicial Precedents*
*Governments > Local Governments > Claims By & Against*
*Governments > State & Territorial Governments > General Overview*
[HN10] The United States Supreme Court has established two rules with regard to 42 U.S.C.S. § 1981 suits against municipalities. First, the exclusive federal remedy for a state governmental unit's § 1981 violation is found in 42 U.S.C.S. § 1983. Second, the United States Supreme Court superimposed upon 42 U.S.C.S. § 1981 actions the limitations on municipal liability embodied in 42 U.S.C.S. § 1983. Two consequences for 42 U.S.C.S. § 1981 plaintiffs suing their municipal employer flowed from this second holding: (1) the city cannot be held liable under the doctrine of respondeat superior; and (2) the plaintiff must plead that the municipality's violation of his right to make contracts was caused by "a custom or policy" as defined by the Supreme Court's 42 U.S.C.S. § 1983 precedent. The Seventh Circuit has interpreted this precedent to require factual allegations showing: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with "final policymaking authority.

*Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Public Discrimination*
*Civil Rights Law > Contractual Relations & Housing > Equal Rights Under the Law (sec. 1981) > Remedies*
*Civil Rights Law > Section 1983 Actions > Educational*

*Institutions*

[HN11] Congress injected some uncertainty into the equation with its amendment to *42 U.S.C.S. § 1981* in the Civil Rights Act of 1991. The amendments added *42 U.S.C.S. § 1981(c)*, which reads: The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law. *42 U.S.C.S. § 1981(c)*. While the amendments likely overrule the holding that *42 U.S.C.S. § 1983* provides the exclusive federal remedy for state actors' *42 U.S.C.S. § 1981* violations, every court addressing the issue has held that the amendments still leave intact the holding that applies *42 U.S.C.S. § 1983* limits on municipal liability to *42 U.S.C.S. § 1981*. These courts rely on the linguistic similarity between the new *42 U.S.C.S. § 1981(c)* and *42 U.S.C.S. § 1983*, as well as the dearth of legislative history indicating an intent to overrule the policy or custom requirement that the Supreme Court grafted onto *42 U.S.C.S. § 1981* pleading against state actors.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*

[HN12] A civil rights plaintiff must set forth minimal factual allegations on those material elements that must be proved to recover.

*Civil Procedure > Remedies > Damages > Punitive Damages*
*Governments > Local Governments > Claims By & Against*
*Torts > Damages > Punitive Damages > Availability > Governmental Entities*

[HN13] There exists the rule of municipal immunity from exemplary damages in civil rights cases.

**COUNSEL:** For GEORGE W JACKSON, JR, plaintiff: Ayesha Salima Hakeem, Attorney at Law, Chicago, IL.

For CITY OF CHICAGO, defendant: Patricia M. Carroll-Smit, City of Chicago, Law Department, Corporation Counsel, Chicago, IL. Susan S. Sher, City of Chicago, Law Department, Chicago, IL.

**JUDGES:** Ruben Castillo, United States District Judge

**OPINION BY:** Ruben Castillo

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff George W. Jackson, Jr. sues defendant City of Chicago for race discrimination under Title VII of the Civil Rights Act, *42 U.S.C. § 2000e-5 et seq.*, and *42 U.S.C. § 1981* (as amended by the Civil Rights Act of 1991), and for age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), *29 U.S.C. § 621 et seq.* Counts I and II of the four-count complaint allege that the City discriminated against Jackson on the basis of race and age when it twice failed to promote him in favor of younger, [*2] less senior, non-Black employees. Count III asserts that the City violated Title VII and the ADEA anew by retaliating against Jackson for grieving to his Union the discriminatory failure to promote. Count IV contends that this same conduct interfered with Jackson's contractual rights on the basis of race, giving rise to his § 1981 claim. Before the Court is the City's Partial Motion to Dismiss under *FED. R. Civ. P. 12(b)(6)*.

**RELEVANT FACTS**

The following facts are drawn from the complaint. [1] Jackson has been employed by the City of Chicago since 1987, first in the Public Works Department, and then, beginning in 1990, in the General Services Department. Compl. PP 10-11. In November and December 1993, two positions with the title of General Foreman became available. *Id.* PP 12, 15, 26-27. The City promoted two younger, non-Black employees over Jackson, a forty-six-year-old African-American with more seniority. *Id.* PP 12, 15, 25-27. Each time he was passed over, Jackson filed grievances with the District Council of Carpenters Union, Local 62 ("Union"). *Id.* at PP 14, 17.

> 1 [HN1] We are bound to accept the allegations in the complaint as true when deciding motions to dismiss. *See Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996)*.

[*3] The City allegedly proceeded to subject Jackson to "unequal terms and conditions of employment" in retaliation for "complaining about discriminatory treatment through filing grievances with the Union." [2] *Id.* PP 21-22, 32-33. For example, Barry Decker, Jackson's supervisor, allegedly began to "criticize [him] more harshly than similarly situated non-black employees" under 40 and to lodge against

Jackson "arbitrary accusations" that were not directed toward similarly situated non-black employees under 40. *Id.* PP 21-22, 32-33, 37-38. More specifically, Jackson alleges that the retaliation consisted of 1) Decker erroneously accusing Jackson of falsifying his time sheet and assaulting another employee, charges of which Jackson was later cleared; 2) Decker criticizing Jackson's work, without provocation, in a loud and abusive manner; and 3) the City's Deputy Commissioner placing Jackson on administrative leave and forcing him to accept a 29-day suspension without pay. *Id.* PP 36, 38-45. These events spanned the period of February 13, 1994 through May 10, 1994. *Id.* PP 36, 44-45.

> 2 While Jackson alleges in his complaint that the grievances complained of the discriminatory manner in which the General Foreman position was filled, Compl. PP 21-22, 32-33, the grievances themselves, which Jackson failed to attach to his complaint but the City provided with its motion, say nothing about discrimination. They grieve only improper notification about the positions and unfair distribution of overtime, and contain no indication that either of these actions was discriminatory. Def. Partial Mot. Dismiss Ex. A, B. We take this issue up later in the opinion. *See supra* pp.10-11 & n.7.

[*4] Jackson states that on September 26, 1994, he filed a charge of discrimination with the EEOC based on the City's twofold failure to promote him and its subsequent disciplinary actions. 3 *Id.* P 8. On June 14, 1996, he filed this lawsuit.

> 3 The charge, typewritten and dated September 26, 1994, is attached to the complaint. Confusingly, Jackson has attached to his response brief a handwritten EEOC charge, nearly identical in substance, that is dated nearly a month earlier, August 31, 1994. Pl. Opp. Mot. Dismiss Ex. H. The Court addresses this discrepancy in connection with the City's defense that Jackson failed to file the charge within the statutory time limit. *See supra* pp. 6-8.

In his complaint, Jackson takes issue with the City's conduct in several respects. First, he contends that the City did not post notice of the General Foreman openings in accordance with its stated policy. *Id.* PP 13, 16, 28. The complaint does not indicate that the failure to post notice was discriminatory. Second, Jackson [*5] alleges that although he was qualified for the positions, the City discriminatorily passed him over for two non-Black employees under 40 with less seniority. *Id.* PP 18-19, 29-30. Third, he claims that the City further violated Title VII and the ADEA by retaliating against him for filing grievances in opposition to the City's discriminatory employment practices. *Id.* P 46. Finally, Jackson alleges that the City's conduct amounted to a race-based discriminatory pattern and practice that deprived him of his right to contract under *42 U.S.C. § 1981*. *Id.* P 48.

In its motion to dismiss, the City challenges the charges of discrimination in Counts I and II with respect to the November 1993 promotion only. Consequently, the Court expresses no opinion as to the sufficiency of Jackson's allegations in those counts premised on his non-promotion in December 1993. The City does, however, contest Counts III and IV in their entirety. For the reasons that follow, the City's partial motion to dismiss is granted. 4

> 4 Jackson's complaint is in disarray. Besides the failure-to-promote claims, Counts I and II contain allegations of retaliatory conduct. These allegations are redundant of Count III, Jackson's retaliation claim. Such repetitive pleading does not conform to [HN2] the Federal Rules of Civil Procedure, which require that separate claims be stated in separate counts. *See* FED. R. CIV. P. 10(b) ("Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . ."). Accordingly, the Court considers the retaliation allegations in connection with Count III only, and limits its analysis of Counts I and II to the November 1993 promotion. We advise Jackson, if he desires to amend and refile his complaint consistent with this opinion, to assign the November and December promotion claims individual counts.
>
> Count III is problematic in its own right. Titled "Retaliation in Violation of Title VII," it perplexingly requests relief under the ADEA, *id.* P 47. The relief paragraph appears to have been mistakenly copied from the ADEA claim in Count II. Given that Count II contains some allegations of ADEA retaliation, the Court considers them in connection with Count III, which we interpret as a claim for retaliation under both Title VII and the ADEA.

The examples in footnotes 3 and 4 are just a few of the numerous contradictions and careless errors in Jackson's complaint. This Court does not take kindly to sloppy drafting, and does not appreciate being forced to wander through a maze of allegations. We can think of no excuse for failing to proofread a complaint before submitting it to a court, and admonish Jackson's counsel, should Jackson file an amended complaint, to review it painstakingly before doing so.

[*6] PLEADING STANDARDS

[HN3] A motion to dismiss brought under *Rule 12(b)(6)* should be granted if the complaint fails to state a claim that entitles the plaintiff to relief. *Corcoran v. Chicago Park Dist., 875 F.2d 609, 611 (7th Cir. 1989)*. In evaluating the motion, the court must assume all well-pleaded allegations in the complaint are true, and construe them in the light most favorable to the plaintiff. *Alexander v. City of Chicago, 994 F.2d 333, 335 (7th Cir. 1993)*. The court must be satisfied beyond doubt that the plaintiff can prove no set of facts in support of his cause of action before dismissing it. *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); R.E. Davis Chem. Corp. v. Diasonics, Inc., 826 F.2d 678, 684-85 (7th Cir. 1988)*. The court need not, however, ignore facts in the complaint that undermine the plaintiff's case. *Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992)*. Keeping in mind these generous pleading standards, we turn to the sufficiency of Jackson's claims.

ANALYSIS

I. Jackson's Age and Race Discrimination Claims are Time-Barred

We first address the City's argument that Counts I and II alleging race and [*7] age discrimination based on the November promotion should be dismissed because they are time-barred.

[HN4] A plaintiff's right to sue in federal court for employment discrimination under either Title VII or the ADEA is dependent on first filing a timely charge of discrimination with the EEOC. *42 U.S.C. § 2000e-5(e)(1), (f)(1) (1994); 20 U.S.C. § 626(d) (1985); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974)* (Title VII); *Anderson v. Illinois Tool Works, Inc., 753 F.2d 622, 624 (7th Cir. 1985)* (ADEA), *overruled on other grounds, Philbin v. General Elec. Capital Auto Lease, 929 F.2d 321 (7th Cir. 1991)*. Timeliness is determined by state law. If the state has an agency with authority to grant relief from employment discrimination, as Illinois does, the plaintiff is afforded additional time -- 300 days, instead of 180 days, from the act of discrimination -- to file the EEOC charge. *42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(2), 633(b); Gilardi v. Schroeder, 833 F.2d 1226, 1230-31 (7th Cir. 1987); Anderson, 753 F.2d at 624; Mitilinakis v. City of Chicago, 735 F. Supp. 839, 841 (N.D. Ill. 1990)*. The limitations period commences [*8] on the date the employee allegedly learned of the discriminatory decision. *Delaware State College v. Ricks, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980)*.

Although the complaint does not specify the exact date of the November promotion or when it was communicated to Jackson, he filed a grievance protesting his non-selection on November 8, 1993. Therefore, the City must have told Jackson about its decision to pass him over before that date. Under *Ricks*, then, the limitations period for Counts I and II began to run, at the latest, on November 8, 1993. *See also Parker v. City of Chicago, 1996 U.S. Dist. LEXIS 929, 1996 WL 41204, at *2, *4 (N.D. Ill. Jan. 30, 1996)* (limitations period for filing charge of discrimination with EEOC began on date plaintiff filed grievance complaining about City's failure to promote him).

Oddly, the real debate is over when the EEOC charge was filed. In the complaint, Jackson alleges that he filed a charge of discrimination with the EEOC on September 26, 1994, and attaches a typewritten form dated as such. Compl. P 8, Ex. A. This puts 322 days between the November 8 grievance and the EEOC filing, past the 300-day statute of limitations. But in his opposition [*9] to the City's motion to dismiss, Jackson maintains that he "in fact filed an EEOC charge of age and race discrimination in the November 1993 promotions on August 31, 1994," just 296 days after the grievance was filed. Pl. Opp. Mot. Dismiss at 3. To corroborate, Jackson attaches to the brief as Exhibit H a handwritten form, dated August 31, 1994, complaining of the very same conduct as the September typed form, except for the fact that the August form asserts a continuing violation. To defeat the City's time-bar argument, Jackson maintains that the operative document is the August filing.

[HN5] This Court, however, is bound to accept as true the allegations of the complaint and its exhibits. *Tarver v. North American Co. Life & Health Ins.*, 919 F. Supp. 1128, 1130 (N.D. Ill. 1996) (citing *Webster v. New Lenox Sch. Dist.*, 917 F.2d 1004, 1005 (7th Cir. 1990)). Looking to these sources, the complaint and its exhibit report a September 26, 1994 EEOC filing. Despite Jackson's protestations, it is this date to which we must look in calculating the limitations period: "If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency [*10] by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993). Because the complaint as it stands sets the time span between the grievance and the EEOC filing beyond 300 days, Jackson's race and age discrimination claims based on the November 1993 failure to promote are time-barred. Accordingly, the portions of Counts I and II relating to the November promotion are dismissed. *See Majka v. City of Chicago*, 1995 U.S. Dist. LEXIS 16465, 1995 WL 654026, at *4 (N.D. Ill. Nov. 6, 1995) (dismissal is the appropriate remedy when the complaint demonstrates that the EEOC charge was not timely filed).

Nevertheless, the dismissal is without prejudice. [HN6] The Court is empowered to consider facts raised in the plaintiff's opposition brief to the extent they can be proved consistent with the allegations in the complaint. *Dausch v. Rykse*, 52 F.3d 1425, 1428 (7th Cir. 1994). While the existence of two substantially identical EEOC charges with different dates appears at first glance logically inconsistent, the Court can conceive of some scenarios in which this would not necessarily be so. We therefore permit [*11] Jackson to amend his complaint to allege the August 31, 1994 filing date, which would remove the time bar, provided his attorneys can do so consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure.

II. Jackson Fails to State a Claim for Retaliation

Jackson's next claim, as we read it, alleges retaliation in violation of both Title VII and the ADEA. In it, Jackson recounts a number of actions taken by the City and his supervisor between February 13 and May 10, 1994 in retaliation for his "complaining about discriminatory treatment through filing grievances with the Union." Compl. P 37. As we explain below, these allegations are not sufficient to survive dismissal.

[HN7] The retaliation provisions of Title VII prohibit an employer from discriminating against an employee because "he has opposed any practice made an unlawful employment practice under [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The ADEA is substantively identical. *See* 29 U.S.C. § 623(d). As distilled by case law, these statutes require [*12] proof of three elements for a prima facie retaliation case: the plaintiff must show (1) he engaged in statutorily protected activity; (2) he suffered an adverse action by his employer; and (3) a causal link between the protected expression and the adverse action. *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 868-69 (7th Cir. 1995); *Reed v. Shepard*, 939 F.2d 484, 492 (7th Cir. 1991). To satisfy the first element -- statutorily protected activity -- the plaintiff must demonstrate that he reasonably believed he was challenging conduct that violates Title VII or the ADEA. *Dey v. Colt Constr. & Devel. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994); *Maldonado v. Metra*, 743 F. Supp. 563, 568 (N.D. Ill. 1990). The critical inquiry is the plaintiff's subjective belief that his employer is acting in ways these statutes forbid, not the objective fact of discrimination. *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir. 1982).

With these standards in mind, we find that the November 8 and December 10 grievances [5] fail the statutorily protected expression element. [6] Indeed, Jackson's allegation that the City retaliated against him for grieving the discriminatory promotions [*13] is directly contradicted by the grievances themselves. Supplied to the Court not by Jackson, but by the City, they say nothing about discrimination. [7] The November grievance merely protests that "there was no notification by phone or mail that there was a position open as General Foreman of Trades in the Department of General Services. There should have been an open bid for all eligible carpenters before the position was filled." Def. Partial Mot. Dismiss Ex. A. The December grievance simply reiterates Jackson's discontent with the City's notification procedures and charges that the City distributed overtime pay unfairly. *Id.* Ex. B. Although the complaint mentions in passing the City's deficient notification, it never alleges that this was discriminatory or in any way contrary to Title VII or the ADEA. Such generalized charges of improper procedure provide no

hook on which this Court can hang a finding that Jackson reasonably believed he was challenging Title VII or ADEA discrimination. [8] See *Coutu v. Martin County Bd. of Comm'rs.*, 47 F.3d 1068, 1074 (11th Cir. 1995) (plaintiff's objection to her low job performance rating is not Title VII-protected conduct because "unfair [*14] treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII."); *Allen v. Denver Public Sch. Bd.*, 928 F.2d 978, 985 (10th Cir. 1991) (no protected expression where plaintiff based retaliation claim on grievance she filed alleging that employer wrongly disciplined her, because "there is nothing on the face of the document to alert the reader that discrimination is being alleged."); *Majka*, 1995 WL 654026, at *8 (former police nurses grieving the City's decision to civilianize their positions did not engage in statutorily protected expression; while the grievance mentioned that employees were "adversely affected," it did not cite discrimination as the cause).

5  The City does challenge the December 10, 1993 grievance insofar as it forms the basis for Jackson's retaliation claim in Count III.

6  We note that the grievances necessarily fail the third element of a retaliation claim as well. No causal link between an adverse employment action and statutorily protected expression can be established unless the expression is, in the first instance, protected.

[*15]

7  The Court will not allow Jackson avoid the plain text of the grievance and take refuge in the rule that the allegations in the complaint are taken as true on motions to dismiss. First, [HN8] documents that a defendant attaches to its motion to dismiss are considered part of the pleadings if "they are referred to in the plaintiff's complaint and are central to [his] claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Clearly the grievances are central; Jackson's complaint makes them the sole basis for the City's alleged retaliation. See, e.g., Compl. PP 14, 21, 23, 36-37. Second, when a pleading is directly at odds with a document that is properly before the court, the document controls. See *Foshee v. Daoust Constr.*, 185 F.2d 23, 25 (7th Cir. 1950) (written contract attached as exhibit to complaint prevails over inconsistent allegations); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (complaint's exhibit supersedes contradictory allegations); *Parker*, 1996 WL 41204, at *4 (court relied on deposition exhibit over conflicting pleading). Refusing to turn a blind eye to the text of a document upon which Jackson relies so heavily in his complaint, we reject the allegations that contradict it.

[*16]

8  Our finding that Jackson did not reasonably believe he was challenging discrimination in the November 8, 1993 grievance does not undermine our conclusion that the statute of limitations for the discriminatory November failure to promote in Counts I and II began on this date. Jackson does not battle the statute of limitations in his complaint or his response brief with the argument that the statute did not begin to run until he belatedly discovered the discrimination. Nor do we consider it; this Court is not required to invent legal arguments for litigants. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995); see *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) ("It is not the role of this Court to research and construct legal arguments open to the parties, especially when they are represented by counsel."). Notwithstanding this, the argument is moot in light of our decision to permit Jackson to amend his complaint with the August 31, 1994 EEOC charge.

A case in point is *Aldridge v. Tougaloo College*, 847 F. Supp. 480 (S.D. Miss. 1994). The plaintiff, a [*17] female, was denied a promotion in favor of an African-American male, and proceeded to file a grievance protesting the employer's decision. Devoid of any charges of discrimination, the grievance simply centered on the complaint that the position "was not posted in the manner that prior promotional opportunities were posted." *Id. at 482*. The plaintiff changed her story in the EEOC charge, which claimed retaliation resulting from her charge of sex discrimination in the grievance. *Id. at 483*. Disregarding this contradictory allegation, the court dismissed the retaliation claim because

> nowhere in the above grievance does plaintiff protest any form of sex discrimination. Her grievance does not even mention that a male was hired for

this position. Instead, her grievance complains that the job vacancy was not properly noticed and that [her employer] had treated her unfairly in certain respects. Plaintiff, then, has not met the first element -- statutorily protected expression -- of her prima facie case.

*Id.* at 484-85. Likewise, Jackson cannot escape the fact that his grievances contain not a scintilla of evidence that he reasonably believed he was challenging [*18] discriminatory conduct.

Jackson perpetuates an exercise in futility by citing the continuing violation doctrine in an effort to salvage his retaliation claim. Jackson argues in his brief, contrary to the complaint, that he was unaware that the City was discriminating against him until November 1995, when "the true, discriminatory motive behind the City's denial of promotions" became apparent upon Jackson's third rejection. [9] Because the November and December promotions were only part of a series of discriminatory acts, according to Jackson, he could not discern their nefarious character until much later. Citing *Jones v. Merchants Nat'l Trust*, 42 F.3d 1054, 1058 (7th Cir. 1994), Jackson maintains that this "continuing violation" by the City saves him from having to show he reasonably believed in late 1993 that he was challenging unlawful employment practices.

[9] This is inconsistent with both the complaint and the EEOC charge. As we have already pointed out, the complaint alleges that Jackson knew about the City's discrimination as early as November 8, 1993, when he filed the grievance. In any event, Jackson was undoubtedly alerted to the City's alleged discrimination by August or September of 1994, when he filed a charge of discrimination with the EEOC.

[*19] Neither *Jones* nor the continuing violation doctrine aid Jackson. First, *Jones* stands for the proposition that when an employer is following a covert discriminatory practice, the limitations period for employment discrimination claims may be tolled until the plaintiff realizes that he is a victim. The *Jones* court did not even deal with retaliation, much less use the continuing violation theory to wipe out the requirement of statutorily protected expression. Second, the continuing violation theory does not relieve Jackson of the need to show that he reasonably believed he was challenging discriminatory conduct by filing the grievances. In fact, that he did not discover the discrimination until 1995 serves to reinforce his lack of a reasonable belief in late 1993. [10] This Court is at a loss to explain how an employer can retaliate against an employee for making charges of discrimination when the employee himself is unaware of it.

[10] Indeed, Jackson's concession that "he did not know then that the City's motives were race and age," Pl. Opp. Mot. Dismiss at 4, alone dooms his retaliation claim.

[*20] In sum, neither the November and December 1993 grievances nor the continuing violation theory can support a retaliation claim. Accordingly, Count III is dismissed.

III. Jackson's § 1981 Claim Must Be Dismissed As Time-Barred

Jackson's final claim is comprised of a conclusory statement that the City's discriminatory and retaliatory actions interfered with his right to contract in violation of 42 U.S.C. § 1981. [11] Compl. P 48. Although Count IV incorporates by reference the allegations supporting Jackson's other claims, those facts cannot sustain a § 1981 action. The complaint as presently worded is deficient because it renders the § 1981 claim time-barred.

[11] In the employment context, a § 1981 claim may arise when the employee is denied a promotion that "would have resulted in a 'new and distinct [contractual] relation between the employee and the employer.'" *Id.* (citations omitted).

Section 1981 protects individuals from, *inter alia*, discrimination in the right to make and enforce [*21] contracts. [12] *Jones*, 42 F.3d at 1059. This focus on racially motivated interference with personal contractual relations, a "fundamental injury to the individual rights of a person," subjects § 1981 claims to state statutes of limitation for personal injury actions. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62, 96 L. Ed. 2d 572, 107 S. Ct. 2617 (1987). In Illinois, this limitations period is two years. *Smith v. City of Chicago Heights*, 951 F.2d 834, 836 n.1 (7th Cir. 1992).

[12] To this effect, § 1981 provides, as amended:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

*42 U.S.C. § 1981 (1994).*

Jackson [*22] filed his complaint on June 14, 1996. But its allegations are limited to discriminatory conduct occurring more than two years earlier, between November 1993 and May 10, 1994. Moreover, according to the EEOC charge attached to the complaint, the latest "Date Discrimination Took Place" was May 10, 1994; the box marked "Continuing Violation" is conspicuously blank. [13] *See* Compl. Ex. A. Ordinarily, this would end the matter, and we would dismiss the claim as time-barred. However, the Court must first address Jackson's argument that the statute of limitations is tolled because the City's discrimination persisted past May 1994 and into the limitations period, generating a "continuing violation." Jackson hinges his case on facts outside the complaint, citing in his response brief successive promotion denials occurring from October 1995 through mid-1996. [14]

13   Jackson's handwritten EEOC charge dated August 31, 1994 does indicate a continuing violation by including the word "continuing" next to these dates. While Jackson may amend his complaint with this document, it nevertheless will not erase the time bar. As we discuss below, the facts before us in both Jackson's complaint and response brief do not support a continuing violation that would toll the limitations period.

[*23]

14   The later promotion denials are consistent with the complaint and its attachments, and we may therefore consider their legal effect in ruling on the motion to dismiss. *Dausch v. Rykse, 52 F.3d 1425, 1428 (7th Cir. 1994).* Moreover, we think it prudent to do so, to avoid amendments to the complaint that prove equally unable to survive the pleading stage.

The continuing violation doctrine enables a plaintiff to prolong the statute of limitations by linking a time-barred act to one that is within the limitations period. *Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).* This can be accomplished using one of three theories. The first encompasses cases in which it is difficult to determine exactly when the discrimination took place, for example, because the employer's hiring or promotion decision was protracted. *Stewart v. CPC Int'l, Inc., 679 F.2d 117, 120 (7th Cir. 1982).* The second applies where the employer has an express, openly espoused policy that allegedly results in discrimination; the tolling continues as long as the policy remains in place. *Id. at 121.* The third pertains [*24] to "charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly." *Id.* Plaintiffs often plead this theory as a "serial violation" or a "pattern of ongoing discrimination." *Selan, 969 F.2d at 565* (citations omitted). Of the three, only the second theory is clearly inapplicable; nowhere does Jackson allege that the City has in place an express policy that discriminates against him.

Upon closer examination, however, the first theory affords Jackson no relief either. It may be that the City's decision making process for each promotion Jackson was denied took place over a period of time long enough for the discriminatory aspect of it to evade detection. Nonetheless, Jackson cannot escape the rule, applicable to this theory, that the statute of limitations begins to run "when the employee knew or should have known that he or she was discriminated against." *Stewart, 679 F.2d at 120.* While one, or even two, promotion denials in late 1993 might not have alerted Jackson that the City was discriminating against him, the "stream of retaliation," Pl. Opp. Partial Mot. Dismiss at 4-5, he encountered from February to May 1994 should [*25] have. Most convincing on this point is the fact that Jackson filed a charge of discrimination with the EEOC in August or September 1994 based on this conduct alone. Nothing occurred between May and September 1994 to further raise his awareness level. Consequently, we find that, with reasonable diligence, Jackson should have known about the alleged discrimination no later than May 10, 1994. *See Jones, 42 F.3d at 1058.*

The third theory, which Jackson appears to invoke with his allegation about the City's discriminatory "pattern and practice," is likewise unavailing. [HN9] The critical inquiry in determining whether an employer has followed a covert practice of discrimination over a period of time is whether its acts were closely related or "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Selan, 969 F.2d at 565*. The passage of time between and the independent nature of the decisions are factors to consider in answering this question. *Selan, 969 F.2d at 567; Jones, 42 F.3d at 1058*.

This Court finds that the materials before it fall far short of establishing a discriminatory pattern and practice linking acts outside and inside [*26] the limitations period -- they are too discrete and too far apart. As other courts have held, "each promotion was "a discrete decision and each time [plaintiff] knew, or should have known, that [he] had not received the promotion and another person had." *Jones, 42 F.3d at 1058*. Likewise, Jackson was cognizant of his non-selection immediately after each time the City decided to promote someone else, as evidenced by the grievances Jackson filed within a week of the November and December decisions. The "discrete, isolated, and completed" nature of the promotions is further demonstrated by the separate bid applications and rejection letters that Jackson attached to his brief. *See* Pl. Opp. Partial Mot. Dismiss Ex. D, E. Moreover, although the 1993 failures to promote are close in time to the City's allegedly discriminatory disciplinary actions in early 1994, this connection does not stretch to reach the limitations period, which began on June 14, 1994. According to Jackson's brief, the next alleged act of discrimination did not occur until nearly a year-and-a-half later, when he was denied another promotion in October 1995. *See* Pl. Opp. Partial Mot. Dismiss Ex. E. The 1995 [*27] and later promotion denials are simply too remote from the 1993-early 1994 conduct to support a continuing violation theory. *See Selan, 969 F.2d at 567* (two-year gap between demotion and removal of employment privileges negated contention that acts were connected). Under these circumstances, we find no support for a continuing violation to toll the limitations period.

Jackson's § 1981 claim is therefore dismissed as time-barred, but without prejudice. He may amend his complaint to add a continuing violation theory only in the event he can plead facts not currently in the complaint or his brief that sufficiently link the late 1993-early 1994 conduct to allegedly discriminatory actions within the limitations period.

Should Jackson be capable of amending Count IV as just described, he must take care to ensure that he meets § 1981's substantive pleading requirements as applied to municipalities. Although the Civil Rights Act of 1991 has left aspects of municipal liability under § 1981 somewhat uncertain, courts interpreting the 1991 amendments have overwhelmingly held that they leave intact the additional pleading requirements needed to state a claim against a city.

In *Jett* [*28] *v. Dallas Independent School District*, [HN10] the Supreme Court established two rules with regard to § 1981 suits against municipalities. First, the Court held that the exclusive federal remedy for a state governmental unit's § 1981 violation is found in 42 U.S.C. § 1983. Second, the Court superimposed upon § 1981 actions the limitations on municipal liability embodied in § 1983. *491 U.S. 701, 733 (1989)*. Two consequences for § 1981 plaintiffs suing their municipal employer flowed from this second holding: 1) the City cannot be held liable under the doctrine of respondeat superior; and 2) the plaintiff must plead that the municipality's violation of his right to make contracts was caused by "a custom or policy" as defined by the Supreme Court's § 1983 precedent. *Id.* at 735-36. The Seventh Circuit has interpreted this precedent to require factual allegations showing: 1) an express policy that causes a constitutional deprivation when enforced; 2) a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; or 3) a constitutional injury caused by a person [*29] with "final policymaking authority." *Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734-35 (7th Cir. 1994)* (citations omitted).

However, [HN11] Congress injected some uncertainty into the equation with its amendment to § 1981 in the Civil Rights Act of 1991. The amendments added subsection (c), which reads: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *42 U.S.C. § 1981 (c) (1994)*. While the amendments likely overrule Jett's first holding, that § 1983 provides the exclusive federal remedy for state actors' § 1981 violations, *see Gallardo v. Board of*

County Comm'rs, 857 F. Supp. 783, 786 (D. Kan. 1994), every court addressing the issue has held that the amendments still leave intact Jett's second holding, applying § 1983 limits on municipal liability to § 1981. See, e.g., Federation of African American Contractors v. City of Oakland, 96 F.3d 1204, 1214-15 (9th Cir. 1996); Dennis v. County of Fairfax, 55 F.3d 151, 156 n.1 (4th Cir. 1995); Johnakin v. City of Philadelphia, 1996 U.S. Dist. LEXIS 445, 1996 WL 18821, at *3-4 (E.D. Pa. Jan. 18, 1996); Philippeaux v. North Central Bronx Hosp., [*30] 871 F. Supp. 640, 655-56 (S.D.N.Y. 1994); Gallardo, 857 F. Supp. at 786. These courts rely on the linguistic similarity between the new subsection (c) and § 1983, as well as the dearth of legislative history indicating an intent to overrule the "policy or custom" requirement that the Supreme Court grafted onto § 1981 pleading against state actors. African American Contractors, 96 F.3d at 1215; Johnakin, 1996 WL 18821, at *3-4; Philippeaux, 871 F. Supp. at 655; Gallardo, 857 F. Supp. at 786-87. The Seventh Circuit has yet to rule on this issue, but this Court finds the reasoning in the above cases persuasive.

Applying these standards, neither Jackson's complaint nor his brief contain any facts indicating the existence of an express policy or custom that deprived him of his constitutional rights. No facts before us indicate that the two state actors whom the complaint implicates -- Jackson's supervisor and the Deputy Commissioner -- have final policymaking authority. If Jackson amends his § 1981 claim in accordance with this opinion, he must also include specific allegations that support one of the three theories laid out by the Seventh Circuit in Baxter. [*31] "Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient." 15 Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994) (citations omitted).

15   We abide, of course, the Supreme Court's rejection of a heightened pleading requirement for civil rights actions involving municipalities above and beyond the notice pleading permitted by Federal Rule of Civil Procedure 8(c). See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993). Nonetheless, [HN12] a civil rights plaintiff must set forth "minimal factual allegations on those material elements that must be proved to recover." Gallardo, 857 F. Supp. at 787.

IV. Jackson's Request for Exemplary Damages Is Stricken

Jackson requests [HN13] exemplary damages to be assessed against the City in connection with his § 1981 claim. The Court strikes this request as contrary to the well-established rule of [*32] municipal immunity from such damages in civil rights cases. See, e.g., Bell v. Milwaukee, 746 F.2d 1205, 1270-71 (7th Cir. 1984); Adams v. City of Chicago, 865 F. Supp. 445, 447 (N.D. Ill. 1994) (citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981)).

CONCLUSION

For the foregoing reasons, the City of Chicago's partial motion to dismiss as to the November 1993 non-promotion in Counts I and II is granted; its motion to dismiss Counts III and IV in their entirety is granted; and its motion to strike Jackson's exemplary damage request is granted. All dismissals are without prejudice. If Jackson does desire to filed an amended complaint consistent with this opinion and with counsel's responsibilities pursuant to Rule 11, he must move for leave to do so on or before January 17, 1997, attaching a draft of the amended complaint. The Court will scrutinize any such proposed amended complaint carefully.

The Court will hold a status hearing in open court on January 21, 1997 at 9:15 a.m.

ENTER:

Ruben Castillo

United States District Judge

December 17, 1996